Joseph F. Hawkins, J.
This writ of habeas corpus, on petition of relator’s counsel, alleges that the relator has been denied due process for, after having been continuously incarcerated for some 41 years, he is entitled to unconditional release.
*654 Convicted of the crime of murder in the second degree in 19.31, the relator was then sentenced to a term of 25 years to life. The sad and pathetic history of petitioner’s crime and his confinement to prison and to hospitals were treated at length by Judge Irving R. Kaufman, writing the majority opinion for the Second Circuit Court of Appeals in United States ex rel. Schuster v. Herold (410 F. 2d 1071 [April 24, 1969], cert. den. 396 U. S. 847 [1969]). By that writ, petitioner challenged the legality of his transfer from Clinton Prison to Dannemora State Hospital.
Since March of 1972, the relator has been an inmate of Green Haven Correctional Facility. I presided at the hearing on the instant writ on July 28,1972, at Green Haven Prison. The delay in ruling upon the writ was occasioned, initially, by requests for the minutes of the said hearing by petitioner’s counsel and, thereafter, by a series of requests for additional time within which to submit and exchange memoranda of law.
On May 16,1972, Roy Schuster had appeared before the Parole Board. At my instance, I obtained a copy of the minutes of said hearing. At the outset, the petitioner read a statement to the board in which he stated, inter alia: ‘ ‘ My conscience would not permit me to accept any sort of parole board supervision.”
The reasons he gave were that he was not in need of supervision by the Parole Board; that the Parole Board had ‘ ‘ cooperated with the corruptively motivated retention of me 24 years beyond the date of merit ” and, lastly, that “ the parole board is not morally fit to supervise anyone, certainly not me.”
From my perusal of the minutes of the said hearing, it is evident that the Parole Board sought to persuade the petitioner to accept the concept of supervision and endeavored, at some length, to explain to Mr. Schuster that the Commissioners could not deviaté from accepted rules and practices respecting supervision during parole.
Upon the hearing before me, despite efforts on behalf of petitioner’s counsel to limit the proceedings to the essential issues, the petitioner, understandably, was virtually irrepressible and obviously under compulsion to discourse upon his grievances, real or fancied.
From my examination of the hospital records, the minutes of the Parole Board hearing and my observations upon the hearing, it is quite apparent that the petitioner suffers from many physical ailments; he is now 68 years of age, has an assortment of physical medical problems and is quite frail. He is also — and not without cause — under considerable mental and emotional stress.
*655 Reverting to the minutes of the Parole Board hearing — and in this respect I do so reluctantly — one gets the impression that after petitioner read his statement, the hoard initiated a Socratic dialogue. Conversant with the prisoner’s history, they were predictably confident that he would re-enter the maze from which he would be unable to extricate himself. Occasionally, petitioner used legal terminology and the board by according them their real legal significance virtually shunted Schuster into refusing any supervision. The board was then able to pronounce as a matter of law that it had no alternative but to deny parole and to hold him until his next hearing before the Parole Board which was scheduled for one year later.
I see no virtue served in embarking upon a lengthy dissertation construing article 8 of the Correction Law. The facts at bar present a most extraordinary situation and one calling for a measure of reasoned and reasonable accommodation to the end of permitting the petitioner to live his few remaining years outside the prison’s walls. Surely it requires neither tremendous legal erudition nor administrative ingenuity to fashion a type of parole conditioned upon a nominal or “constructive supervision.” (I note that within the last several days, the United States District Court for the Southern District of New York, in one instance, imposed sentence upon a defendant of 18 months, suspended execution of the sentence, and then placed the defendant on “ probation ” for “ one day.”)
I do not construe the instant writ as a predicate for the petitioner’s vindication or for any possible future legal action. Equally, in view of the petitioner’s history, the Parole Board might have considered the real purposes and efficacy of such supervision and reporting by relator and the relationship of such procedure to the protection of society or the rehabilitation of the prisoner.
At bar, to insist upon the petitioner reporting at stated intervals and remaining under the nominal supervision of his parole officer would be to require Mr. Schuster to make his obeisances to a Parole Board officer and thereby submit to a symbolic act which apparently offends his conscience.
Accordingly, I direct that the Parole Board expeditiously conduct another hearing and to arrange for the presence of petitioner’s counsel thereat; further, that the Parole Board give due weight to the existing unusual and extraordinary facts which, in my opinion, appear to compel unencumbered parole.
To aid in expediting the matter, the within opinion is deemed the order of the court.